IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TOWN OF GEORGETOWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civ. No. 15-554-SLR |
| | ) |
| DAVID A. BRAMBLE, INC. and LIBERTY | ) |
| MUTUAL INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| v. | ) |
| | ) |
| LEE RAIN, INC., and TRAVIS, PATTERN & | ) |
| FOUNDRY, INC., | ) |
| | ) |
| Third Party Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 15th day of March, 2016, having reviewed plaintiff Town of

Georgetown's motion to quash (D.I. 47), and the papers submitted in connection

therewith, the court issues its decision based on the following reasoning:

1. **Background**.  The issue before the court is whether Davis, Bowen & Friedel,

Inc. ("DBF") is considered an agent of plaintiff Town of Georgetown ("Georgetown") in

the above captioned matter.  On November 23, 2015, Georgetown filed a motion to

quash a subpoena directed to DBF at the request of defendant Liberty Mutual Ins. Co.

("Liberty Mutual").  (D.I. 47)  On February 4, 2016, after having heard oral argument on

Georgetown's motion to quash, the court ordered Georgetown to submit "for the court's

consideration the relevant parts of those documents upon which [Georgetown] relies to

establish an agency relationship between [Georgetown] and [DBF]." (D.I. 64) The court permitted both defendants to respond in kind. (*Id.*) The court now considers the documents presented by all parties to determine the presence of an agency relationship between Georgetown and DBF.[1] (D.I. 67, 69, 70)

2. Georgetown has presented evidence to support its contention that DBF was its agent with respect to the construction project ("project") giving rise to this litigation. Georgetown makes two primary arguments in supporting its position: that the relevant contractual documents pertaining to the project indicate that DBF was its agent for purposes of the project, and that DBF acted as Georgetown's "Town Engineer" for the past twenty years. (D.I. 67 at 1-2)[2]

3. With respect to its first argument, Georgetown refers to its agreement with Bramble that sets forth the terms of the project, which stated, "[t]he [p]roject has been designed by Davis Bowen & Friedel, Inc. [], which is to act as Owner's representative, assume all duties and responsibilities, and have the rights and authority assigned to Engineer in the Contract Documents in connection with the completion of the Work in accordance with the Contract Documents." (D.I. 67-1 at 10) Georgetown also refers to the performance bond accompanying the contract for the project, which describes DBF as "Owner's Representative" on the bond. (D.I. 67-1 at 19) In supporting its second argument, Georgetown includes documents demonstrating that DBF has acted as Georgetown's "Town Engineer" for approximately twenty years. (D.I. 67 at 2) These

---

[1] This court has jurisdiction pursuant to 28 U.S.C. § 1332.

[2] For purposes of consistency, the court refers to the docketed items according to the page numbers provided via ECF, rather than the handwritten page numbers that were included in a portion of the documents submitted to the court.

2

documents include Town Council meeting minutes that refer to an employee of DBF as the "Town Engineer"[3] (D.I. 67-1 at 37-39), as well as correspondence between DBF and Georgetown in which DBF notified Georgetown of "changes to [DBF's] on-call municipal rates" over the course of several years. (D.I. 67-1 at 36, 50-51, D.I. 67-2 at 23)

4. In contrast, Liberty Mutual states that DBF was never an agent of Georgetown because Georgetown did not exercise the level of control over DBF necessary to establish an agency relationship. (D.I. 69 at 1) Liberty Mutual states that DBF is a general contractor, and that Georgetown admitted such when it responded to Liberty Mutual's brief in opposition to the motion to quash. (*Id.*) According to Liberty Mutual, independent contractors are generally not seen as agents of the parties with whom they have contracted. (*Id.*) Liberty Mutual further states that, although there is a limited exception to this general rule when the owner/contractee's control dominates the work being performed under the contract, DBF would not fall within the scope of this exception. (*Id.*)

5. In support of this assertion, Liberty Mutual states that Georgetown did not have sufficient knowledge of engineering to be able to control decisions made by DBF and that Georgetown relied on DBF to obtain relevant information about the project. (*Id.*) Liberty Mutual also refers to Georgetown's contract with DBF for the project and states that, under the applicable case law, DBF was not Georgetown's agent because the contract indicates that Georgetown did not "control" DBF in such a way that would

---

[3] The relevant Town Council meeting minutes refer to "Hans Medlarz" as "Town Engineer." (D.I. 67-1, at 37-39) Georgetown indicates Medlarz was affiliated with DBF. (D.I. 67 at 2) (The status of DBF as Town Engineer dates back at least 20 years, as evidenced by minutes designating Hans Medlarz [of DBF] as "Town Engineer").

3

establish an agency relationship.[4]  (*Id.*)  These contract terms include a clause stating

that "DBF's design documents belong to DBF" and that DBF alone "shall retain an

ownership and property interest therein."  (D.I. 69-1 at 6)  Liberty Mutual also refers to a

portion of the contract that states, "Owner shall not be responsible for discovering

deficiencies in the technical accuracy of Engineer's services."  (*Id.* at 9)  Furthermore,

arguments made by Bramble appear to support Liberty Mutual's assertions generally.[5]

(D.I. 70)

      6.  **Legal Standard.**  Independent contractors are not generally viewed as agents

of parties with whom they contract.  However, "the terms agent and independent

contractor are not always mutually exclusive." *Fisher v. Townsends, Inc.*, 695 A.2d 53,

60 (Del. 1997) (citing *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1360 (10th Cir.

1987)).  "Although a person cannot be a servant and an independent contractor, a

person can be an independent contractor and an agent."  *Id.* at 61 (internal citations

omitted).

---

[4] Liberty Mutual states that, pursuant to the court's ruling in *Brown v. Interbay Funding, LLC*, 2004 WL 2579596, at*3 (D. Del. 2004), "[t]he exception does not apply here because Georgetown, by its own admission, did not exercise the near-total level of control necessary to strip DBF of its independent-contractor status."  (D.I. 69 at 1) Liberty Mutual argues that the factual scenario in the instant case is comparable to that which appeared in *Brown*, and that DBF was therefore not an agent of Georgetown. (*Id.*)  The court's reasoning in *Brown* is discussed in the "Legal Standards" section of this memorandum.

[5] Bramble's letter to the court states that while "Bramble does not dispute that DBF was the Owner's Representative for purposes of the Project," "[t]his does not necessarily make DBF the Town's 'agent' for purposes of the Project."  (D.I. 70, at 1, n.1)  Bramble also states that if the court were to find an agency relationship between Georgetown and DBF, the result would be questionable.  (*Id.* at 2) (listing services provided by independent contractors for municipalities and stating that these services do not establish agency relationship).

4

7. Further, "one well-recognized exception to the general rule of non-agent status for an independent contractor turns on the "amount of control retained or exercised by the owner." *Id.* (citing *E.I. DuPont De Nemours & Co. v. Griffith,* 130 A.2d 783, 784 (Del. Super. 1957)). Under *DuPont*, whether such control exists turns on whether "the owner's or contractee's control or direction dominates the manner or means of the work performed, the non-agent status of the independent contractor can be destroyed and the independent contractor becomes an agent capable of rendering the principal vicariously liable for the acts of the independent contractor." *DuPont*, 130 A.2d at 785.

In explaining its analysis, the *DuPont* court stated:

Generally speaking, there is no absolute rule to be applied in determining whether or not a purported contractor is in fact independent, or is in fact an agent or employee of the owner. Each case stands or falls on its own facts. The test of independency consists of the amount of control retained or exercised by the owner, particularly with respect to the absolute right to direct the manner and method of proceeding with the work rather than with respect to the end result only. A requirement that the work be performed according to standards and specifications imposed by the owner is not sufficient to establish the degree of control necessary to make a presumably independent contractor the agent of the owner. But retention of the right not only to insure conformity with specifications but the retention or exercise of the right to direct the manner in or means by which the work shall be performed will destroy the independent status of the contractor.

*Id.* at 784-85 (internal citations omitted).

8. In addition, this court has ruled on the issue of agency and found that the "element of continuous subjection to the will of the principal" is a defining factor of the agency relationship, as compared to other relationships. *Brown v. Interbay Funding, LLC*, 2004 WL 2579596, at *3 (D. Del. 2004). In *Brown*, the court found that no agency relationship existed between the parties who had contracted to provide an "independent

5

appraisal report."[6] *Id.* In concluding that an agency relationship did not exist, the court reasoned that one of the parties was not permitted "to use the appraisal for any use other than that specified as outlined in [the letter between the parties.]" *Id.* Because of this arrangement, the court found that one of the parties was not an agent "because its conduct was not controlled by [the other party." *Id.*

9. Further, the Restatement (Second) of Agency states that an agency relationship requires "an understanding between the parties which, as interpreted by the court, creates a fiduciary relation in which the fiduciary is subject to the directions of the one on whose account he acts." Restatement (Second) of Agency § 1 (1958). Additionally, Comment B to Subsection (1) states that "[i]t is the element of continuous subjection to the will of the principal which distinguishes the agent from other fiduciaries and the agency agreement from other agreements." *Id.*, cmt. b.

10. Given this standard, while independent contractors are not typically considered agents, they may be deemed agents if the principal or owner exercises sufficient control over them. The existence of an agency relationship, therefore, is determined by the level of control the principal exercises over the independent contractor.

---

[6] In *Brown*, the plaintiffs brought suit against a bank and appraisal company and alleged, among other things, that an appraisal conducted on their property was discriminatory and in violation of the Equal Credit Opportunity Act and the Fair Housing Act. *See Brown*, 2004 WL 2579596, at*1. The plaintiffs alleged the bank was "liable for the discriminatory appraisal because [the appraisal service] was acting as its agent." *Id.* at 3. The court examined the agreement between the bank and the appraisal service and ultimately found a lack of an agency relationship. *Id.* ("Although the agreement placed certain requirements on the appraisal, [the bank] was not in control of the process. [The appraisal service] used its own tools and employees to appraise the property. In addition, [the bank] was not responsible for paying [the appraisal service] for the appraisal, as plaintiffs paid for it.").

11. **Analysis**. While Georgetown makes numerous references to language in the agreement between Georgetown and Bramble, as well as DBF's longstanding status as "Town Engineer," this evidence is not determinative in deciding whether an agency relationship exists between Georgetown and DBF. In assessing Georgetown and DBF's relationship using the standard articulated above, the court examines the level of control Georgetown possessed over DBF.

12. Under the standard set forth in the Restatement (Second) of Agency, DBF is not an agent of Georgetown because DBF was not "continuously [subject] to the will" of Georgetown in acting as "Town Engineer" or with respect to the contract between Georgetown and Bramble. Restatement (Second) of Agency § 1 cmt. b (1958). As Liberty Mutual indicates, Georgetown could obtain only certain information regarding the project from DBF and Georgetown lacked sufficient knowledge of engineering to control DBF. (D.I. 69 at 1) Further, language contained in the contract between Georgetown and DBF expressly demonstrates a lack of control that would establish an agency relationship. By disclaiming responsibility for the technical accuracy of DBF's services, Georgetown indicated that it intended not to exercise complete control over DBF in regard to this contract. (*Id.* at 2)

13. In addition, under *Brown*, DBF is not an agent of Georgetown because the arrangement between the two parties indicates a lack of the requisite control. In *Brown*, the court examined the contract in determining whether one party exercised sufficient control over the other in order to establish a principal-agent relationship. *See Brown*, 2004 WL 2579596, at *3 ("Although the agreement placed certain requirements on the appraisal, [the bank] was not in control of the process."). Similar to the agreement at

7

issue in *Brown*, the contract between Georgetown and DBF demonstrates that DBF retained its design documents, and DBF explicitly stated that if Georgetown used its design documents, it would bear all associated risks.  In light of *Brown*, these conditions demonstrate that Georgetown did not control DBF in such a way that would indicate DBF was Georgetown's agent.

14.  **Conclusion**.  For the above reasons, the court concludes that DBF was not Georgetown's agent for purposes relevant to this litigation.  Accordingly, Georgetown's motion to quash (D.I. 47) is denied.  An appropriate order shall issue.

United States District Judge