# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TOWN OF GEORGETOWN, a municipal corporation | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 15-554-LPS |
| | : | |
| DAVID A. BRAMBLE, INC. and LIBERTY MUTUAL INSURANCE COMPANY, | : | |
| | : | |
| Defendants, | : | |
| | : | |
| v. | : | |
| | : | |
| LEE RAIN, INC., a foreign corporation, and TRAVIS PATTERN & FOUNDRY INC., a foreign corporation | : | |
| | : | |
| Third-Party Defendants. | : | |

Stephani J. Ballard, Law Offices of Stephani J. Ballard, LLC, Wilmington, DE

> Attorney for Plaintiff

Scott E. Chambers, Gary E. Junge, Schmittinger & Rodriguez, P.A., Dover, DE

> Attorneys for Defendant David A. Bramble, Inc.

Joelle E. Polesky, Stradley Ronon Stevens & Young, LLP, Wilmington, DE
Patrick R. Kinglsey, Benjamin E. Gordon, Stradley Ronon Stevens & Young, LLP, Philadelphia, PA

> Attorneys for Defendant Liberty Mutual Insurance Company

Roger D. Landon, Murphy & Landon, Wilmington, DE

> Attorney for Third-Party Defendant Lee Rain, Inc.

## MEMORANDUM OPINION

July 27, 2017
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiff Town of Georgetown ("Plaintiff" or the "Town") filed suit against Defendants David A. Bramble, Inc. ("Bramble") and Liberty Mutual Insurance Company ("Liberty Mutual" and, collectively, with Bramble, "Defendants") in Delaware Superior Court on June 3, 2015. (D.I. 1-1 Ex. A)  On June 29, 2015, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  (D.I. 1)  On August 6 and 7, 2015, Bramble and Liberty Mutual, respectively, filed third-party complaints against Third-Party Defendants Lee Rain, Inc. ("Lee Rain") and Travis, Pattern & Foundry, Inc. ("Wade Rain" and, collectively, with Lee Rain, "Third-Party Defendants").  (D.I. 11, 14)

Pending before the Court are: (i) the Town's Motion for Partial Summary Judgment (D.I. 157) ("Town Motion"); (ii) Bramble's Motion for Summary Judgment Regarding Plaintiff's Claim (D.I. 159-2) ("Bramble Motion"); (iii) Liberty Mutual's Motion for Summary Judgment Against the Town (D.I. 156) ("Liberty Mutual Motion"); (iv) Bramble's Motion for Partial Summary Judgment Against Lee Rain (D.I. 145) ("Bramble Third-Party Motion"); and (v) Liberty Mutual's Motion for Joinder in Bramble's Motion for Partial Summary Judgment Against Lee Rain (D.I. 151) ("Motion for Joinder").  Certain other requests for relief have also been made during the course of briefing and oral argument, including the Town's request for summary judgment on Defendants' affirmative defense of design defect and Bramble's request for summary judgment on the applicability of the Town's shop drawings.

For the reasons set forth below, the Court will grant the Town Motion, the Bramble Third-Party Motion, and the Motion for Joinder.  The Court will deny the Bramble Motion, the Liberty Mutual Motion, and the requests relating to design defect and shop drawings.

1

## I.    BACKGROUND

In or around May 2012, the Town "solicited bids for the construction of a large, solid set spray irrigation system known as the 'Pettyjohn Woods Spray Irrigation Project'" (the "Project" or "System"). (D.I. 158 at 1)  "The purpose of the System was to carry . . . wastewater . . . from the Town's wastewater treatment facility" to a 90-acre wooden area, using above-ground pipes. (*Id.*)

After receiving numerous bids, in July 2012 the Town awarded the Project to Bramble in July 2012 for $1,212,786.85. (*See id.*)  As the general contractor for the Project, Bramble entered into an Agreement ("Agreement" or "Contract") with the Town. (*See* D.I. 158-1 at A-32)  The Agreement consisted of a signed Agreement, a number of General Conditions, and other Contract Documents. (*See id.* at A-35-36)  Pursuant to the Agreement, Bramble was required to obtain a Performance Bond, which was issued by Liberty Mutual as surety for Bramble. (*See id.* at A-40)

The Agreement also required Bramble to work with Davis, Bowen & Friedel ("DBF"), a private engineering firm designing the Project. (*See id.* at A-32)  Under the Agreement's terms, Bramble represented that it "ha[d] given Engineer [('DBF')] written notice of all conflicts, errors, ambiguities, or discrepancies that [Bramble had] discovered in the Contract Documents." (*Id.* at A-35)  The Agreement further provided that Bramble would "be fully responsible to [the Town and DBF] for all acts and omissions of [its] Subcontractors, Suppliers, and other individuals or entities performing or furnishing any of the Work just as Contractor is responsible for Contractor's own acts and omissions." (*Id.* at A-113)

Bramble hired Lee Rain, an irrigation subcontractor, for the above-ground pipe portion of the Project. (*See id.* at A-54)  Lee Rain, in turn, obtained materials for that portion of the project

2

from supplier Wade Rain. (*See id.* at A-181) Bramble submitted information and data on

materials to DBF though a Shop Drawing process. (*See id.* at A-115) In its Shop Drawings,

Bramble represented that the materials met specified performance and design criteria for each

specification. (*See id.* at A-115-16) Moreover, before submitting each Shop Drawing, the

Contract provided that Bramble was to have "determined and verified the suitability of all

materials." (*Id.* at A-116) The General Conditions in the Contract further provided that "all

materials and equipment incorporated into the Work shall be as specified or, if not specified,

shall be of good quality and new." (*Id.* at A-112)

Specification #15952 (the "Specification") required Bramble and Lee Rain to obtain self-

draining gaskets. (*See id.* at A-122-41) To meet the Specification, Bramble and Lee Rain

selected Wade Rain's automatic self-draining lateral coupler gaskets: 10-6-6L and 10-6-4L" ("L-

style gaskets"), which are characterized as "normal fast draining" gaskets. (*See id.* at A-136)

These L-style gaskets were identified in Shop Drawing 10, which was stamped as "[a]pproved"

by DBF for "general compliance with the contract documents." (*Id.* at A-122)

Construction of the System began "on or about August 20, 2012." (*Id.* at A-13 ¶ 41)

DBF acknowledged June 7, 2013 as the date of final completion, and Lee Rain issued its release

of liens on or around that same date. (D.I. 168 at B-85) The Town began operating the System

in October 2013. (*See* D.I. 158-1 at A-14 ¶ 50)

The Town first discovered problems in the System's pipes in January 2014. (*See* D.I. 168

at B-90; D.I. 169 at B-222) On January 16, 2014, the Town discovered split pipes and broken

couplers in the System. (*See* D.I. 169 at B-222) In the summer and fall of 2014, the Town also

observed leaks from the pipes themselves. (*See id.* at B-223) Despite the Specification's

3

reference to L-style gaskets to be installed in the pipes, the Town discovered that the gaskets in the field were actually a combination of L-style and M-style gaskets, the latter of which are characterized as "normal slow draining" gaskets. (D.I. 158-1 at A-182)

The Town notified Bramble of these problems through various correspondence in 2014 and 2015. (*See, e.g.*, D.I. 168 at B-90) Bramble responded that any failures from the gaskets were "the result of [the] design and operation of the [S]ystem, unrelated to performance under the Contract." (D.I. 158-1 at A-17 ¶ 73; *id.* at A-57) (internal quotation marks omitted) Liberty Mutual agreed with Bramble "that the damages were . . . the result of design and maintenance errors." (*Id.* at A-21 ¶ 87; *id.* at A-58) (internal quotation marks omitted)

"Unable to obtain any informal resolution with Defendants, the Town formalized a claim under the [Performance] Bond and declared a Contractor's and Surety's default, ultimately resulting" in the instant litigation. (D.I. 166 at 2) The Town filed its complaint on June 3, 2015, alleging the following claims: breach of contract against Bramble (Count I); breach of warranty against Bramble (Count II); and breach of contract against Liberty Mutual (Count III). (D.I. 1-1 Ex. A ¶¶ 96, 103, 107)[1]

Thereafter, Bramble and Liberty Mutual both filed third-party complaints. On August 6, 2015, Bramble filed a complaint against DBF, Lee Rain, and Wade Rain, stating as particular claims: negligence/non-performance against DBF (Count I); breach of contract, indemnification, and negligent conduct against Lee Rain (Count II); breach of implied warranties against Lee Rain and Wade Rain (Count III); and breach of express warranties against Lee Rain and Wade Rain

---

[1]This case was originally filed in the Delaware Superior Court and then, on June 29, 2015, removed by Defendants to this Court. (D.I. 1-1 Ex. A)

4

(Count IV).  (D.I. 11)  The next day, August 7, Liberty Mutual filed its third-party complaint

against DBF, Lee Rain, and Wade Rain, specifically: contribution/indemnity against DBF (Count

I); contribution/indemnity against Lee Rain (Count II); breach of implied warranties against Lee

Rain and Wade Rain (Count III); and breach of express warranties against Lee Rain and Wade

Rain (Count IV).  (D.I. 14)

    The Town, Bramble, and Liberty Mutual filed their motions for summary judgment

between February and April 2017.  Briefing was completed on the last of the motions on May

31.[2]  The Court heard oral argument on June 27, 2017.  ("Tr.")  The final pre-trial conference is

scheduled for August 3, 2017 and a jury trial is scheduled to begin on August 14, 2017.

## II.    LEGAL STANDARDS

    Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  An assertion that a fact cannot be – or,

alternatively, is – genuinely disputed must be supported either by "citing to particular parts of

materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials," or by "showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot

---

[2]After the hearing, various parties filed a total of four letters.  (*See* D.I. 174, 175, 176,
178)

5

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the

moving party has carried its burden, the nonmovant must then "come forward with specific facts

showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation

marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party,

and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson

Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating

party opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue") (internal quotation marks

omitted). The "mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment;" a factual dispute is genuine

only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50

(internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating

entry of summary judgment is mandated "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in

support of the nonmoving party's position is insufficient to defeat a motion for summary

judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving

6

party. *Anderson*, 477 U.S. at 252.

## III.    DISCUSSION

### A.    The Town's Motion for Summary Judgment

The Town Motion consists of several subsidiary motions.  The Court addresses each in turn.

#### 1.    Choice of Law Governing the Contract

The Town seeks summary judgment that Delaware law governs the Contract.  (*See* D.I. 158 at 10)  In response, Bramble does not raise a choice-of-law dispute or otherwise oppose this portion of the Town Motion.  (*See generally* D.I. 170)  At oral argument, Bramble's counsel stated that "as a matter of law, Delaware law governs the Contract."  (Tr. at 19)

Accordingly, the Court will grant summary judgment that Delaware law governs the Contract.

#### 2.    Applicability of the Contract and Performance Bond

The Town asks for summary judgment that Bramble is bound by the Contract and that both Bramble and Liberty Mutual are bound by the Performance Bond.  (*See* D.I. 158 at 12)  In their briefing, Defendants did not dispute the binding nature of the Contract or the Performance Bond.  At oral argument, counsel for Defendants agreed that the Contract binds Bramble and that the Performance Bond binds both Defendants.  (*See* Tr. at 50)

Accordingly, the Court will grant summary judgment that the Agreement is applicable to the Town's claims against Bramble and that the Performance Bond is applicable to the Town's

claims against both Defendants.[3]

### 3.    Bramble's Responsibility for Suppliers', Subcontractors', and Third-Parties' Acts and Omissions in Relation to the Project

The Town seeks summary judgment that Bramble "is responsible . . . for the acts and

omissions of subcontractors and suppliers and third-parties who contributed to the Work of the

Project."[4]  (D.I. 158 at 16)  In the Town's view, Bramble's responsibility for third parties' acts

and omissions is unambiguously provided for in § 6.06 of the General Conditions of the

Contract, which states:

> Contractor shall be fully responsible to Owner and Engineer for all
> acts and omissions of the Subcontractors, Suppliers, and other
> individuals or entities performing or furnishing any of the Work,
> just as Contractor is responsible for Contractor's own acts and
> omissions.

(D.I. 158-1 at A-113 § 6.06)  The Contract defines "Work" as follows:

The Contract defines "Work" as:

> The entire construction or the various separately identifiable parts
> thereof required to be provided under the Contract Documents.
> Work includes and is the result of performing or providing all
> labor, services, and documentation necessary to produce such
> construction, and furnishing, installing, and incorporating all
> materials and equipment into such construction, all as required by
> the Contract Documents.

---

[3]In granting summary judgment on the applicability of the Contract and Performance Bond, the Court does not determine at this point which particular issues under the Contract or Performance Bond will be submitted to the jury at trial.

[4]In moving for summary judgment on this issue, the Town "does not seek . . . a finding that Bramble" or any other third-party "actually engaged in defective work and/or provided defective materials." (D.I. 158 at 13; *see also* Tr. at 15)  As such, the Court does not reach the issue of Bramble's or any third party's liability under the Contract.

(D.I. 158-1 at A-109)

During oral argument, Bramble essentially agreed with the Town's position. Bramble's counsel stated: "Bramble is liable for breach of contract if Lee Rain breached its contract with Bramble. . . . If Lee Rain is [liable for] breach of contract, . . . in its scope and acting as a subcontractor for Bramble, Bramble breached, too." (Tr. at 20-21) Accordingly, the Court will grant summary judgment on this issue.

### 4.    Bramble's Responsibility for Defective Materials Used in the System

The Town asks the Court to grant summary judgment that Bramble is responsible for any defective materials that were used in the System. (*See* D.I. 158 at 17) In support, the Town cites two provisions in the General Conditions in the Contract: § 6.03(A), which provides that the "Contractor shall . . . assume full responsibility for all . . . materials . . . necessary for the . . . completion of the Work," and § 6.19(A), by which "Contractor warrants and guarantees to Owner [i.e., the Town] that all Work . . . will not be defective." (D.I. 158-1 at A-112, 117) In the Town's view, these provisions, read together, are "consistent with the Contractor being fully responsible for materials." (D.I. 158 at 17)

At oral argument, Bramble argued that its liability for defective materials is limited to materials that are inconsistent with the Town's specifications. (*See* Tr. at 22-23) In support of its position, Bramble cited § 1.02.D.1 and § 6.03(B). (*See id.* at 22, 29) In Bramble's view, § 1.02.D.1 defines "defective work" as "work that does not conform to the Contract Documents; . . . work that fails a standard or test specified in the contract documents; or work that has been damaged prior to final payment." (*Id.* at 22) Bramble further contends that § 6.03(B) requires that "[a]ll materials . . . incorporated into the Work shall be as specified or, if not specified, shall

9

be of good quality and new" (D.I. 158-1 at A-112), suggesting that if the materials are "as specified" they need not be "of good quality and new" (Tr. at 29). According to Bramble, both provisions, when read together, support its position that "defective work" is work that fails to conform to the relevant specification(s). (*See id.* at 23)

The Court disagrees with Bramble. Section 1.02.D.1 pertains to "defective *work*," not "defective *materials*." (D.I. 158-1 at A-110) (emphasis added) While § 6.03(B) requires that materials "shall be as specified," the separate provision on which the Town relies, § 6.03(A), provides that "Contractor shall . . . assume full responsibility for all . . . materials . . . necessary for the . . . completion of the Work." (*Id.*) Additionally, § 6.17(C) states that "[b]efore submitting each Shop Drawing or Sample, Contractor shall have . . . determined and verified the suitability of all materials offered with respect to the indicated application." (*Id.* at A-115-16) Based on these provisions, the Court agrees with the Town that "no objective, reasonable third party could understand th[e] Contract to mean . . . anything other than the fact that the parties intended the Contractor . . . to be fully responsible to the [Town] for the quality and suitability of the materials put into the system." (D.I. 158 at 17) (internal quotation marks and citation omitted)[5]

Accordingly, the Court will grant summary judgment that Bramble is responsible to the Town for any defective materials used in constructing the System.[6]

_____

[5]*See generally Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage.").

[6]In its motion for partial summary judgment, the Town "does not seek summary judgment on whether defective materials (if any) were the cause of the System's damages." (D.I. 158 at 18 (emphasis omitted); *see also* Tr. at 70) Therefore, the Court has not determined whether

## 5.    Design Defect Affirmative Defense

Bramble, as part of its motion for summary judgment (addressed further in the next section), moved for summary judgment against the Town based on Bramble's affirmative defense of design defect. (*See* D.I. 159 at 12)  In its answering brief, the Town opposed Bramble's motion and asked the Court instead to "grant summary judgment against Defendants" on this affirmative defense. (D.I. 166 at 18 n.24)  At oral argument, Bramble withdrew its request for summary judgment that it had established its affirmative defense of design defect, while the Town continued to maintain that the Court "could . . . and should" rule on whether summary judgment should be entered for the Town and eliminate this defense. (Tr. at 49, 64-65, 67)  The Court will deny the Town's request.

In the Town's view, defective gaskets, not a design defect, caused the damage to the System; specifically, the gaskets were "defectively manufactured" (Tr. at 69), such that "they did not even meet the[ir] manufacturer's own specifications" (D.I. 169 at B-206; *see also* D.I. 166 at 14; D.I. 168 at B-121-22).  Bramble responds that the System's drainage issues were caused not by any defects in the gaskets but instead by DBF's failure to include low-point drains in its design. (*See* Tr. at 17, 40)  Bramble further contends that DBF's alleged design errors cannot be attributed to Bramble because Bramble had "no design responsibility for th[e] Project, . . . as a matter of law." (*Id.* at 30; *see also* D.I. 159-1 at A57; D.I. 178-1 Ex. C at 14)

The record reveals a genuine dispute of material fact as to whether the damage to the System was caused by DBF's defective design or Bramble's defective gaskets.  A reasonable

---

defective materials were actually used in the System or whether defective materials caused damage to the System.

11

factfinder could find that the damage to the System did not result from Bramble's workmanship or materials but, instead, was the result of DBF's design defects. (*See* D.I. 159 at 13; D.I. 159-1 at A57)[7] But a reasonable factfinder could alternatively find that the gaskets failed to conform to the manufacturer's specifications – and, hence, failed to conform to the Contract Documents – and that these failures were what caused the damages to the System. (*See* D.I. 166 at 14; D.I. 168 at B-121-22)

Accordingly, the Court will deny Town's request for summary judgment on Defendants' affirmative defense of design defect.

### B.    Bramble's Motion for Summary Judgment Against the Town

#### 1.    Breach of Contract

Bramble seeks summary judgment on the Town's breach of contract claim, arguing that the Town suffered no damages as a result of Bramble's alleged breach of contract. (*See* D.I. 159 at 8) Bramble notes that "[t]he only alleged breach of contract by Bramble is the substitution of M gaskets for L gaskets." (*Id.*) In Bramble's view, "[t]he Town cannot prove that damage . . . resulted from this alleged breach" because "there is a negligible difference between M and L gaskets," such that the System would still fail to work properly "even if all the M gaskets were replaced by L gaskets." (*Id.* at 8-9 (emphasis omitted); *see also* D.I. 159-1 at A52; Tr. at 25)

---

[7]In its briefing, the Town argues that "Bramble hangs virtually its entire case for its affirmative defense of 'design defect' on purported admissions . . . by Scott Adkisson of DBF." (D.I. 166 at 15) (internal quotation marks omitted) While the Court agrees with the Town that Mr. Adkisson's statements "do not constitute statements of admissions" binding the Town (*id.*; *see also* Tr. at 39), his statements are certainly relevant to the issue of design defect, as they relate to whether DBF's alleged failure to include low point drains played a role in causing damage to the System. (*See* D.I. 159-1 at A57) The Court does not agree with the Town's suggestion that Mr. Adkisson's statements are the only evidence in the record which might be found to support a design defect affirmative defense.

The Town responds that "Bramble incorrectly claims that the Town's only alleged breach of contract . . . is the substitution of M gaskets for L gaskets." (D.I. 166 at 10) (internal quotation marks omitted; ellipses in original) In the Town's view, Bramble is also liable for "deficient services and products," including its failure to use self-draining gaskets. (*Id.*) (internal quotation marks omitted) The Town argues that both the L- and M-style gaskets are defective because they "measure uniformly smaller than their manufacturer's specifications" and have an inner diameter that is "smaller than the size of the pipe they are supposed to drain." (*Id.* at 11; *see also* D.I. 169 at B-206 ("[The gaskets] were defective because they did not even meet the manufacturer's own specifications.")) As the Town sees it, supplying defective gaskets is a breach because "Bramble . . . contractually agreed that the gaskets . . . [it] supplied would be of good quality and free of defects." (D.I. 166 at 11)

A reasonable factfinder could find for either side on this dispute. A reasonable factfinder could find that Bramble's alleged breach resulted in damages, for reasons including that the gaskets Bramble installed were too small. Alternatively, a reasonable factfinder could find that no damages resulted from the M-gaskets because all of the same damage would have resulted even had Bramble used the L-gaskets. At bottom, the Court agrees with the Town that a "critical issue in the case: 'what caused the drainage failure and damages experienced by the System,' is a heavily disputed question of material fact." (D.I. 166 at 3)

Accordingly, the Court will deny summary judgment on the breach of contract claim.

## 2.    Breach of Warranty Claim

Bramble seeks summary judgment that it did not breach its warranty to the Town ("Warranty"). (*See* D.I. 159 at 10-11) In relevant part, the Warranty provides "that all Work will

13

be in accordance with the Contract Documents and will not be defective." (D.I. 159-1 at A13)

In Bramble's view, the Contract further defines "defective" in § 1.02.D.1, which provides:

> The word "defective," when modifying the word "Work," refers to Work that is
> unsatisfactory, faulty, or deficient in that it:
>
>> a. does not conform to the Contract Documents; or
>>
>> b. does not meet the requirements of any applicable inspection,
>> reference standard, test, or approval referred to in the Contract
>> Documents; or
>>
>> c. has been damaged prior to Engineer's recommendation of final
>> payment

(D.I. 158-1 at A-110)

In light of these provisions, Bramble contends that none of its work on the Project could

amount to a breach of warranty because the work "complied with the Contract Documents and

any deviation therefrom (i.e., substitution of M for L gaskets) was immaterial." (D.I. 159 at 11;

*see also* Tr. at 35) Bramble further contends that its work cannot be defective under

§ 1.02.D.1(b) or § 1.02.D.1(c), respectively, because "DBF . . . stated that there were no

problems with Bramble's workmanship" and there is no "allegation that Bramble's work was

damaged prior to DBF's recommendation of final payment." (D.I. 159 at 11)

The Town counters that Bramble breached the Warranty by providing defective gaskets

that failed to conform to the Contract Documents. (*See* D.I. 166 at 12) In support of its position,

the Town points to General Condition § 6.17(C), which provides that "before submitting any

Shop Drawing, the Contractor shall have . . . determined and verified the suitability of all

materials offered with respect to the indicated application." (*Id.*) (internal quotation marks

omitted) In the Town's view, the gaskets incorporated into the System did not conform to the

14

Warranty because they were "defectively manufactured, such that they [did] not meet their own manufacturer's . . . specifications." (*Id.* (internal quotation marks omitted); *see also* Tr. at 62)

In reply, Bramble emphasizes that it satisfied "the only contractual specification that related to the gaskets": that the gaskets be "approved self-draining gaskets." (D.I. 173 at 3) (internal quotation marks omitted) According to Bramble, "[a]ll pertinent evidence demonstrates that the installed gaskets [do] self-drain" and, moreover, the Town approved them. (*Id.* at 7)

The record demonstrates genuine issues of material fact precluding an award of summary judgment. For instance, the parties provide conflicting evidence as to whether Bramble's workmanship was proper and in conformity with the Contract Documents. (*See* D.I. 159 at 11; D.I. 166 at 12) A reasonable jury could find, as Bramble asserts, that Bramble's workmanship complied with the Contract Documents and, thus, did not amount to a breach of warranty. (*See* D.I. 178-1 Ex. C at 14) Alternatively, a reasonable jury could find, as the Town contends, that Bramble's selected "self-draining" gaskets did not conform to the manufacturer's specifications, failed to self-drain properly, and were a breach of Bramble's warranty to the Town. (*See* D.I. 168 at B-121-22; D.I. 169 at B-217; Tr. at 53-54)

Accordingly, the Court will deny summary judgment on the breach of warranty claim.

### 3.    **Shop Drawings**

At oral argument, Bramble requested summary judgment that "the shop drawings do not . . . . create . . . any binding obligations on the part of Bramble," as the shop drawings "neither add to, nor subtract from, Bramble's responsibilities." (Tr. at 78) In Bramble's view, § 1.01 of the Contract "unambiguous[ly]" excludes shop drawings from the definition of Contract Documents. (*Id.* at 77; *see also* D.I. 158-1 at A-107 ("Approved Shop Drawings . . . are not Contract

15

Documents")) Bramble further contends that § 9.01(A) "lists all . . . [documents] that are

considered [C]ontract [D]ocuments" without including shop drawings in that list. (Tr. at 45-46;

*see also* D.I. 170 at 12 n.43; D.I. 178-1 at 3-4) Additionally, Bramble points out that § 9.01(C)

provides that "[t]here are no Contract Documents other than those listed above in" § 9.01(A).

(D.I. 178-1 at 4)

    In opposition, the Town relies on § 3.04(B), which provides that approved Shop

Drawings may "supplement" "[t]he requirements of the Contract Documents." (*Id.* at 5-6; *see

also* Tr. at 56-57) Because DBF approved the shop drawing at issue (*see* D.I. 158-1 at A-122)

("Shop Drawing 10" or "approved shop drawing"), it follows, the Town contends, that the

approved shop drawing supplemented Bramble's obligations under the Contract, and Bramble is

obligated "to provide work and materials [that] are in compliance with the [approved] shop

drawing" (Tr. at 60).

    Under Delaware law,[8] "[w]hen the issue before the Court involves the interpretation of a

contract, summary judgment is appropriate only if the contract in question is unambiguous."

*United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007). "A contract is

not rendered ambiguous simply because the parties do not agree upon its proper construction."

*Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

Rather, an ambiguity exists only when a contract is fairly susceptible to two or more reasonable

interpretations. *See GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776,

780 (Del. 2012); *Rhone-Poulenc*, 616 A.2d at 1196.

    Here, the Contract may be read as supporting both sides' positions with respect to

---

[8]There is no dispute that Delaware law applies.

whether Shop Drawing 10 added to or otherwise modified Bramble's obligations under the
Contract. Although § 1.01 and § 9.01(C) exclude shop drawings from the list of documents that
are considered Contract Documents, § 9.01(D) provides that "[t]he Contract Documents may
only be amended, modified, or supplemented as provided in [§] 3.04," and § 3.04 provides that
"[t]he requirements of the Contract Documents may be supplemented, and minor variations and
deviations in the Work, may be authorized by . . . [the] Engineer's approval of a Shop Drawing."
(D.I. 178-1 at 4-6) In view of these provisions, the Contract could reasonably support the
Town's position that Shop Drawing 10 supplemented Bramble's obligations under the Contract.
Alternatively, the Contract's provisions could also support Bramble's position that Shop
Drawing 10 is not a Contract Document and, therefore, imposes no binding obligations on
Bramble.

Accordingly, the Court will deny Bramble's request for summary judgment that the shop
drawings do not create any binding obligations on the part of Bramble.

## C.   Liberty Mutual's Motion for Summary Judgment Against the Town

### 1.   Liberty Mutual's Liability as Surety

Liberty Mutual seeks summary judgment that it is not liable as Bramble's surety because
Bramble itself is not liable on the Town's breach of contract and breach of warranty claims. (*See*
D.I. 156-1 at 14) Liberty Mutual presents essentially the same arguments Bramble pressed in its
motion for summary judgment (*see* D.I. 159) – that is, Bramble "buil[t] what was designed" (D.I.
156-1 at 13; *see also* Tr. at 18); "the substitution of some M gaskets for L gaskets" does not give
rise to damages (D.I. 156-1 at 14; *see also* Tr. at 26); and the installed gaskets conformed to the
Contract Documents (*see* D.I. 156-1 at 15).

17

The Town opposes the Liberty Mutual Motion. In doing so, the Town relies on identical arguments to those offered in its opposition to the Bramble Motion. (*See* D.I. 167 at 4, 9; D.I. 168 at B-121-22)

The Court concludes that just as summary judgment is not warranted in favor of Bramble, neither is it warranted in favor of Liberty Mutual. The same reasons for denying the Bramble Motion also lead the Court to deny this portion of the Liberty Mutual Motion. Accordingly, the Court will deny Liberty Mutual's motion for summary judgment of non-liability as Bramble's surety.

### 2.    Timeliness of the Town's Performance Bond Claim

Liberty Mutual also asks the Court to grant summary judgment that the Town's claim under the Performance Bond is untimely. (*See* D.I. 156-1 at 17) In pertinent part, the Performance Bond provides that any court proceeding "shall be instituted within two years after Contractor Default or within two years after Contractor ceased working or within two years after Surety refuses or fails to perform its obligations under this Bond, whichever occurs first." (D.I. 1-1 Ex. A at 43) The parties agree that the earliest of the listed dates under the Performance Bond here is "two years after Contractor ceased working." (D.I. 167 at 13; D.I. 1-1 Ex. A at 43) The parties' dispute is over the date on which the Contractor, i.e., Bramble, ceased working.

Liberty Mutual contends that the date on which "Contractor ceased working" is the date on which physical construction activity concluded. (*See* D.I. 156-1 at 17) Since physical construction on the Project was complete by May 2013, but the Town did not file suit until June 2015, on Liberty Mutual's view the Town's claim under the Performance Bond is untimely. (*See id.*)

18

The Town, by contrast, contends that the date on which "Contractor ceased working" is
the date on which Bramble conveyed its final release of liens. (*See* D.I. 167 at 13) (citing
evidence) Because Bramble released its final liens on June 7, 2013, and the Town filed suit on
June 3, 2015, it would follow that the Town's claim under the Performance Bond is timely.[9]

The parties agree that their dispute should be resolved by the Court as a matter of law.
(*See* Tr. at 82-84) Doing so, the Court agrees with the Town. Liberty Mutual itself
acknowledged – in a letter to the Town – that the date of final completion of the Project for
purposes of insurance and ***bonding*** was June 7, 2013. (*See* D.I. 168 at B-85 (emphasis added);
Tr. at 84-85) The Contract also provides that Bramble's "final application for payment" required
"complete and legally effective releases or waivers . . . of all Lien rights arising out of or Liens
filed in connection with the Work". (D.I. 168 at B-39) Thus, the parties agreed that Bramble's
work would not be considered complete for purposes of receiving final payment until Bramble
provided releases or waivers of all liens. There is no basis to conclude that the parties' intent, as
reflected in the Contract, was to treat the physical completion of construction as the date on
which the "Contractor ceased working" for purposes of claims to be made on the Performance
Bond.

Because the Town filed its complaint was filed on June 3, 2015, less than two years after
the Bramble ceased working on June 7, 2015, the Town's claims under the Performance Bond
are timely. (*See* D.I. 1-1 Ex. A at 2, 43) Accordingly, the Court will deny the Liberty Mutual

---

[9]The Town also argues that the contractual limitations period should be tolled, as its
damages are based on a latent defect that could not have been discovered sooner. (*See* D.I. 167 at
15) The Court does not address this issue because, as explained below, the Town's claim under
the Performance Bond is timely.

19

Motion.

## D. Bramble's Motion for Partial Summary Judgment Against Lee Rain[10]

### 1. Lee Rain's Obligation to Indemnify and Defend Bramble

Bramble seeks summary judgment that Lee Rain has an obligation to indemnify and defend Bramble for "any matter arising out of or connected to the Subcontract" between Bramble and Lee Rain. (D.I. 145 at 10) According to Bramble, Lee Rain's obligation to indemnify and defend Bramble is specified in the Affidavit, Release of Lien, and Waiver of Claim (hereinafter, the "Affidavit") that Lee Rain executed "in connection with the receipt of . . . final payment" from Bramble.[11] (*Id.* at 5) In Bramble's view, the Affidavit's indemnification provision is "clearly enforceable" because Maryland law – which governs both the Subcontract and the Affidavit – recognizes and enforces indemnification agreements. (*Id.* at 10)

The Court agrees with Bramble. *See Cofield v. Lead Indus. Ass'n*, 2000 WL 34292681, at *8 (D. Md. Aug. 17, 2000) ("Under Maryland law, a right of indemnification can arise by express agreement or by implication."); *Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566, 569 (Md. 1997) (noting that, under Maryland law, "[t]he duty to defend is broader than the duty to indemnify"). Accordingly, the Court will grant summary judgment that Lee Rain is obligated to

---

[10]The Court will grant Liberty Mutual's motion for joinder in Bramble's Motion for Partial Summary Judgment Against Lee Rain. (D.I. 151)

[11]In relevant part, the Affidavit provides that Lee Rain "[a]grees to indemnify and hold harmless the Contractor . . . from and against any and all costs, claims, demands, suits, actions, losses, liens, damages, judgments, and expenses of any kind . . . , however caused, resulting from, arising out of, or in any way connected with the Contract and Subcontractor." (D.I. 145 at 5) (alteration in original; internal quotation marks omitted)

20

indemnify and defend Bramble.[12]

Lee Rain's opposition to this conclusion is based, first, on its assertion that the relevant portion of the Affidavit is unenforceable because it "[was] not supported by any consideration." (D.I. 152 at 7) The Court disagrees. The indemnification clause in the Affidavit was "expressly authorized by [Section 2.13 of the] Subcontract"[13] and, as such, is "supported by the same consideration that supports the Subcontract." *United States v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 835 (D. Md. 2016) ("[A] release required by the provisions of a contract is supported by the same consideration that supports the contract itself.") (internal quotation marks omitted)

Lee Rain also contends that the Affidavit is an impermissible modification of the Subcontract. (*See* D.I. 152 at 9) Citing the Subcontract's anti-modification clause, Lee Rain observes that the Affidavit is not signed by Bramble. (*See id.*) However, anti-modification clauses are generally "disfavored and not enforced under Maryland law." *Kabba v. Rent-A-Ctr., Inc.*, 2017 WL 1508829, at \*8 (D. Md. Apr. 27, 2017); *see also Galloway v. Santander*

---

[12]Because the Court has already concluded that Lee Rain is obligated to indemnify and defend Bramble as per the Affidavit, the Court does not reach the question of whether Lee Rain is similarly obligated to defend Bramble pursuant to the Subcontract. (*See* D.I. 145 at 11)

[13]In pertinent part, Section 2.12 of the Subcontract provides:

> [T]o the fullest extent permitted by law, Subcontractor agrees to indemnify, hold harmless, and defend Bramble [(the "Indemnified Parties")] . . . from and against any and all liability for loss, damage, or expense for which the Indemnified Parties may be held liable by reason of . . . damage to any property of whatsoever kind or nature arising out of or in any manner connected with the work to be performed for the Indemnified Parties.

(D.I. 145 at 4) (second ellipses in original)

21

*Consumer USA, Inc.*, 819 F.3d 79, 88 (4th Cir. 2016) ("[U]nder Maryland law, contractual limitations on future modifications are not effective to prevent parties from entering into new agreements orally or by performance."). Instead, Maryland law generally allows parties to "modify their original agreement by their conduct 'notwithstanding a written agreement that any change to a contract must be in writing.'" *Galloway*, 819 F.3d at 88 (quoting *Univ. Nat'l Bank v. Wolfe*, 369 A.2d 570, 576 (Md. 1977)).

Finally, Lee Rain argues that the Affidavit is unconscionable. (*See* D.I. 152 at 10) Lee Rain's defense is untimely because it was not raised until Lee Rain included it in its answering brief in opposition to Bramble's motion for partial summary judgment. (*See* Tr. at 93) Neither Bramble nor Liberty Mutual had prior notice of the defense; nor did Lee Rain seek leave to amend its pleadings at any point before filing its answering brief. (*See* D.I. 175 at 2)

Belatedly, at oral argument and in a post-hearing letter, Lee Rain contends it disclosed its unconscionability defense during a Court-sponsored mediation and seeks leave to amend. (*See* D.I. 174 at 1; Tr. at 91-92, 98) Statements made solely at a mediation or in connection with Court-sponsored alternative dispute resolution ("ADR") do not provide an opposing party formal notice of an intent to assert a defense such as unconscionability. Lee Rain's attempt to use disclosures it purportedly[14] made in the context of ADR is improper. Nor would it be right for the Court to allow Lee Rain, at this very late date, to amend its case to add unconscionability. Lee Rain's inexcusable delay unfairly prejudiced Bramble by depriving it of the opportunity to

_____

[14]It is not even clear that Lee Rain disclosed its position during ADR. The Court's standard practice is for confidential mediation statements not to be shared with other parties and not to disclose what is said to the mediator ex parte. (*See* D.I. 175 at 1) ("Liberty emphatically denies Lee Rain raised the concept of unconscionability at mediation.")

22

take discovery regarding unconscionability. *(See* Tr. at 94; *see also Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) ("[D]elay alone is an insufficient ground to deny leave to amend. . . . However, at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.") (internal quotation marks and citation omitted); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (stating that plaintiff's delay in amending her complaint was unreasonable because "[the] proposed amendment was requested three years after the action was filed" and "[m]ost of the facts were available to plaintiff . . . before she filed her original complaint").

Accordingly, the Court will grant summary judgment that Lee Rain is obligated to indemnify and defend Bramble, pursuant to the terms of the Affidavit.

### 2.    Lee Rain's Obligation to Name Bramble as an Additional Insured

Bramble asks the Court to grant summary judgment that Lee Rain breached its obligation to name Bramble as an additional insured, pursuant to Section 2.13 of the Subcontract. *(See* D.I. 145 at 12) In pertinent part, Section 2.13 requires "the Subcontractor . . . , at its sole expense, [to] furnish to the Contractor Certificates" of "Products/Completed Operations Coverage" insurance. (D.I. 145 at 4-5) (internal quotation marks omitted) Lee Rain responds that "Selective Insurance Company of New England ('Selective') has on multiple occasions conceded that Bramble was named as an additional insured by Lee Rain." (D.I. 152 at 14) Thus, in Lee Rain's view, it has fulfilled its contractual obligation to provide insurance.

Section 2.13 of the Subcontract unambiguously requires Lee Rain to purchase "Products/Completed Operations Coverage," maintain such coverage for at least two years after

23

final payment, and to name Bramble as an additional insured.  No reasonable jury could find from the record that Lee Rain did so.  Accordingly, the Court will grant Bramble's Motion for Partial Summary Judgment Against Lee Rain.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the Town Motion, the Motion for Joinder, and the Bramble Third-Party Motion.  The Court will deny the Bramble Motion, the Liberty Mutual Motion, the Town's request regarding design defect, and Bramble's request regarding shop drawings.  An appropriate Order follows.

24